UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ⊣ 11 06

UNITED STATES OF AMERICA,

        Plaintiff,

- against -

MUSTAFA OZSUSAMLAR and
OSMAN OZSUSAMLAR,

        Defendants.

**MEMORANDUM ORDER**

S1 05 Cr. 1077 (PKL)

**LEISURE, District Judge:**

A Grand Jury indicted the defendants in this case, Osman Ozsusamlar ("Osman") and Mustafa Ozsusamlar ("Mustafa"), on October 17, 2005. On January 4, 2006, the Grand Jury returned a Superseding Indictment, charging both defendants with three counts each: one count of conspiracy to commit a murder for hire in violation of Title 18, United States Code, section 1958(b); one count of murder for hire in violation of Title 18, United States Code, sections 1958 and 2; and one count of conspiracy to commit extortion in violation of Title 18, United States Code, section 1951. The Government has moved *in limine* for a ruling allowing it to introduce, in its case-in-chief, evidence that Mustafa was involved in a previous extortion that included threats of violence. The Government submits that this evidence is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence to prove intent, knowledge, and absence of mistake or accident. For the reasons set forth below, the Government's motion is DENIED.

## BACKGROUND

The defendants are father and son: Mustafa is the father and Osman is the son. According to the Government, the victims of the murder for hire scheme were a husband and

wife who owed approximately $283,000 to the two defendants. (Gov't Letter Supp. Mot. 2, Mar. 23, 2006 ("Gov't Letter").) Mustafa, while incarcerated at the Metropolitan Correctional Center (the "MCC") pending sentencing following his conviction in a separate case, asked a fellow prisoner (the "CW") if he knew of someone who could collect the debt, by force if necessary, and kill the husband and/or wife[1] after the debt was collected, offering to pay the killer ten percent of the money collected. (Gov't Letter 2.) The CW reported the scheme to the Government, who, through the CW, supplied Mustafa with the contact information and first name of an undercover officer posing as a collector/hit man. (Gov't Letter 2.) Mustafa directed Osman to locate the victims' address and contact the undercover officer. (Gov't Letter 2.) Osman contacted the undercover officer and arranged a meeting, at which the two discussed the details of the scheme. (Gov't Letter 3.) Some time later, the undercover officer called Osman to tell him that he had carried out the scheme and that he had collected the debt. (Gov't Letter 3.) Osman and the undercover officer made arrangements to meet, and Osman was arrested when he arrived at the agreed-upon location. (Gov't Letter 3.)

The Government seeks to admit evidence that Mustafa was involved in a previous extortion that included threats of violence. This evidence will consist of either (1) the live testimony of two witnesses who testified at a 1995 jury trial of Mustafa in the District of New Jersey on one count of conspiracy to take hostages and one count of hostage taking, in addition to several counts of alien smuggling; or (2) if the Government is unable to locate these witnesses, their prior sworn testimony pursuant to Federal Rule of Evidence 804(b)(1). (Gov't Letter 5, 9 n.6.) At the 1995 trial, Nermin Durson and Adnan Dikili testified that in or about July 1994, Mustafa, with the help of Osman, arranged for four aliens, including Durson, to be smuggled into

---

[1] It is not clear from either the Government's submissions or the Superseding Indictment whether the intended victim was the husband, the wife, or both.

the United States for a fee of approximately $10,000 per alien. (Gov't Letter 5.) Mustafa

brought Durson to Paterson, New Jersey, and demanded additional money from Dikili, who was

Durson's boyfriend and who was living in Turkey at that time, before he would release Durson

unharmed. (Gov't Letter 5.) The jury convicted Mustafa on all counts, but Hon. Dickenson R.

Debevoise, U.S. District Judge for the District of New Jersey, entered a judgment of acquittal on

the two hostage-taking counts.

## DISCUSSION

1.    Motions *in Limine*

A motion *in limine* allows the trial court to rule in advance of trial on the admissibility

and relevance of certain forecasted evidence. See Luce v. United States, 469 U.S. 38, 41 n.4

(1984) (noting that, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in*

*limine* rulings, the practice has developed pursuant to the district court's inherent authority to

manage the course of trials"); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union

Fire Ins. Co. v. L.E. Myers Co. Group, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). The trial court

should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on

all potential grounds. See United States v. Van Putten, No. 04 Cr. 803, 2005 WL 612723, at *3

(S.D.N.Y. Mar. 15, 2005) (Leisure, J.) (citing Noble v. Sheehan, 116 F. Supp. 2d 966, 969 (N.D.

Ill. 2000)); see also Baxter Diagnostics, Inc. v. Novatek Med., Inc., No. 94 Civ. 5520, 1998 WL

665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying a motion *in limine* to preclude presentation of

evidence regarding a potential punitive damages claim because the motion was too sweeping in

scope to be considered prior to trial). Indeed, courts considering a motion *in limine* may reserve

judgment until trial, so that the motion is placed in the appropriate factual context. See Nat'l

Union Fire Ins. Co., 937 F. Supp. at 287 (citing Hawthorne Partners v. AT&T Techs., Inc., 831

F. Supp. 1398, 1400 (N.D. Ill. 1993)). Further, a court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." Luce v. United States, 469 U.S. 38, 41 (1984).

II.     Rule 404(b) Standard

Federal Rule of Evidence 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). The Supreme Court has set forth four requirements that should be followed by courts exercising their discretion under Rule 404(b): "Prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial. In addition, (4) at defendant's request, the district court should give the jury an appropriate limiting instruction." United States v. Downing, 297 F.3d 52, 58 (2d Cir. 2002) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)). The Second Circuit has adopted an "inclusionary approach" under Rule 404(b), admitting evidence of prior crimes, wrongs or acts "unless it is introduced for the sole purpose of showing defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996) (citations omitted); see also United States v. Colon, 880 F.2d 650, 656 (2d Cir.1989). The Court need only determine by a preponderance of the evidence under Rule 104(a) whether a jury could reasonably find that the defendant committed the proffered prior acts. See Huddleston, 485 U.S. at 687-90. The district court has broad discretion to admit evidence pursuant to Rule 404(b), and its ruling will not be overturned on appeal absent abuse of discretion. See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000).

4

The Government, in its memorandum in support of its *in limine* motion, informs the Court that it expects that the main issue in dispute at trial will be whether defendants intended to have the victims killed or to use force to collect the debt. (Gov't Letter 7.) The Government believes it most likely that defendants will argue that they merely were attempting to collect an outstanding debt and that the plot to use force or violence was a mistake or accident. (Gov't Letter 7.) The Government submits that the prior testimony of Dikili and Durson is probative of Mustafa's intent because it establishes that defendants previously used similar tactics—*viz.*, threats of violence—to collect money. (Gov't Letter 7.)

It is well settled that evidence of prior acts may be admitted to show a defendant's knowledge or intent. See United States v. Bok, 156 F.3d 157, 165-66 (2d Cir. 1998) (finding trial court acted within its discretion in allowing admission of defendant's tax paying record to prove his intent to commit tax evasion); United States v. Clemente, 22 F.3d 477, 482-83 (2d Cir. 1994) (finding district court's admission of similar act evidence on issues of knowledge and intent proper); United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir.1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that defendant acted with the state of mind necessary to commit the offense charged."). However, evidence of a prior act "should not be admitted as proof of the defendant's knowledge or intent unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence.'" United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994) (Kearse, J.) (quoting United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987)).

It appears at this stage that the Government offers Dikili's and Durson's testimony for a permissible purpose other than to show Mustafa's propensity to commit the crimes charged. In

5

addition, because Dikili's and Durson's testimony would make it more difficult for a jury to believe that Mustafa's involvement in the events underlying the instant charges was simply the result of an accident or a mistake, it also appears that the testimony is relevant to the issue of whether Mustafa possessed the requisite intent or knowledge, and tends to make more probable the fact that Mustafa had intent or knowledge of the use of force. See Fed. R. Evid. 401. However, prior-act evidence offered to prove the defendant's knowledge or intent may be admitted only after the defendant has asserted a state of mind defense, thereby putting knowledge and intent at issue. See, e.g., Riverwoods v. Chappaqua Corp., 30 F.3d 339, 345-46 (2d Cir. 1994) (finding intent at issue after defendant asserted in its answer and opening statement that it had no intent to extort); United States v. Myerson, 18 F.3d 153, 166 (2d Cir. 1994) (holding similar acts by defendant admissible when defendant asserted a state of mind defense); United States v. Figueroa, 618 F.2d 934, 939 (2d Cir. 1980) (Newman, J.) ("[I]f the evidence is offered to prove the defendant's knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue."). The Government has made clear that it seeks to introduce the prior-act testimony on the assumption that defendants will attempt to argue that they lacked the requisite intent for the crimes charged. (Gov't Letter 7.) While it is true that Mustafa did not deny that he would dispute the issue of his intent in his opposition to the Government's motion (see Mustafa's Letter Opp'n Mot., Mar. 27, 2006), Mustafa's brief response has given the Court no indication whatsoever of what his defense theory will be at trial.[2] The Court cannot find that Mustafa has put intent at issue on this limited basis. Cf. United States v. Brand, No. S1 04 Cr.

---

[2]  Osman's counsel has indicated to the Court that he has agreed with Mustafa's counsel "that depending on the evidence adduced at trial, [they] may be seeking an entrapment charge." (Letter from Robert Osuna, Esq., to the Court, dated April 11, 2006.) This conditional statement does not suffice to put Mustafa's intent at issue at this time.

194, 2005 WL 77055, at \*4 (S.D.N.Y. Jan. 12, 2005) (Leisure, J.) (allowing government to introduce prior act evidence in its case in chief to prove defendant's knowledge and intent where defendant, in opposition papers and at oral argument, did not deny he would dispute the issue of intent at trial and repeatedly emphasized that his alleged conduct did not demonstrate an intent to solicit minors to engage in sexual acts). Therefore, at this time, the Court denies the Government's motion to admit the testimony of Durson and Dikili.[3]

## CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is DENIED.

**SO ORDERED.**
**New York, New York**

April __11__, 2006

_____
U.S.D.J.

---

[3]     Of course, the Government may renew its request to introduce this evidence in its case-in-chief if other developments at trial, including Mustafa's opening statement or cross-examination of witnesses, make clear that intent is in dispute. See United States v. Bok, 156 F.3d 157, 166 (2d Cir. 1998) (finding trial court acted within its discretion in allowing similar act evidence in government's case-in-chief where defendant had proposed jury instructions concerning intent); United States v. Inserra, 34 F.3d 83, 90 (2d Cir. 1994) (finding similar act evidence offered to prove defendant's intent was admitted properly where defendant's opening statement and cross-examination of a witness demonstrated that the issue would be disputed). By the same token, Mustafa may forestall completely the introduction of this prior act evidence if he indicates with sufficient clarity that he will not contest the elements of Mustafa's knowledge and intent of the charged crimes. See United States v. Colon, 880 F.2d 650, 659 (2d Cir. 1989) ("[T]o take such an issue out of a case, a defendant must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed."); Figueroa, 618 F.2d at 942 (finding that "[w]hen the Government offers prior act evidence to prove an issue, [defense] counsel must express a decision not to dispute that issue with sufficient clarity" if counsel wants to remove that issue from the case). Such a statement by Mustafa need not take the form of a formal stipulation. See Figueroa, 618 F.2d at 942 (stating that while the defense may remove an issue from the case by means of a formal stipulation, "a formal stipulation is not required or necessarily appropriate" because "[t]he conditional nature of such a stipulation may easily be misunderstood" by a jury). However, "[i]f a defendant does not wish to enter into a formal stipulation, he or she must at least 'express a decision' to restrict the defense case so as not to raise the issue of intent, and to accept a jury instruction that would keep that issue out of the case." Colon, 880 F.2d at 656 (quoting Figueroa, 618 F.2d at 942).