UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/20/2021
```

UNITED STATES OF AMERICA

v.

MUSTAFA OZSUSAMLAR,

Defendant.

No. 05-CR-1077-1 (RA)

MEMORANDUM
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Defendant Mustafa Ozsusamlar moves for reconsideration of the Court's denial of his motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, the motion is denied.

## BACKGROUND

Mr. Ozsusamlar is 77 years old and serving a 423-month term of imprisonment at FCI Hazelton in West Virginia. This term consists of two sentences that are being served consecutively: a 235-month sentence for various bribery, fraud, and illegal transportation convictions; and a 188-month sentence for murder-for-hire related convictions. He is currently serving the latter sentence. On February 4, 2021, the Court received a letter from Mr. Ozsusamlar requesting a reduction of sentence under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Dkt. 143. He attested in that letter that his age and health conditions put him at increased risk of serious illness from COVID-19. The Court appointed Mr. Ozsusamlar pro bono counsel, who supplemented his medical records; the Government opposed the motion. Dkts. 144, 146, 147. On May 13, 2021, the Court denied the motion. Dkt. 148; *United States v. Ozsusamlar*, No. 5-CR-1077 (RA), 2021 WL 1947502 (S.D.N.Y. May 13, 2021). Notwithstanding the Government's concession that Mr.

1

Ozsusamlar's medical conditions constituted extraordinary and compelling reasons supporting release under § 3582(c)(1)(A), the Court agreed with the Government that the 18 U.S.C. § 3553(a) sentencing factors weighed against his release. On September 8, 2021, Mr. Ozsusamlar moved for reconsideration of the Court's decision. Dkt. 155. Although Mr. Ozsusamlar was assisted by counsel in his initial motion, he appears to be proceeding pro se on reconsideration.[1]

## LEGAL STANDARD

Pursuant to the compassionate release statute, as amended by the First Step Act, a court may reduce a term of imprisonment if three requirements are met: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "the reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the reduction is supported by the sentencing factors set forth in 18 U.S.C. § 3553(a). § 3582(c)(1)(A). This inquiry "requires an assessment of whether the relevant [§ 3553(a)] factors outweigh the extraordinary and compelling reasons warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." *United States v. Daugerdas*, No. 09-CR-581, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020).[2] § 3553(a)'s factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence," and "to protect the public from further crimes of the defendant." § 3553(a).

A defendant seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

---

[1] Local Criminal Rule 49.1(d) provides that a reconsideration motion shall be filed within fourteen days of the Court's determination of the original motion. Mr. Ozsusamlar's reconsideration motion was filed nearly four months after this Court's original decision. Dkt. 155. In light of his pro se and incarcerated status, however, the Court exercises its discretion to excuse his untimely filing.

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). *See* Loc. Crim. R. 49.1(d) (a reconsideration motion shall "set[] forth concisely the matters or controlling decisions which [a party] believes the Court has overlooked"). Accordingly, a reconsideration motion "may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Simon v. United States*, Nos. 12-CV-5209, 07-CR-474 (ER), 2021 WL 242360, at *2 (S.D.N.Y. Jan. 25, 2021).

Given Mr. Ozsusamlar's pro se status at this stage, the Court interprets his filings to "raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

## DISCUSSION

On reconsideration, Mr. Ozsusamlar largely "devotes his energy to arguing issues that would be relevant only to his appeal." *United States v. Lisi*, No. 15-CR-457 (KPF), 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020). For example, he asserts that ineffective assistance of counsel, prosecutorial misconduct, and plain error render his previous convictions and sentences invalid. Dkt. 155 at 4-11. Not only are these arguments better suited to a motion for new trial, a direct appeal, or a collateral attack,[3] but they also were not raised in his initial motion or addressed in the Court's earlier decision. Moreover, several of Mr. Ozsusamlar's arguments relate solely to § 3582(c)(1)(A)'s "extraordinary and compelling reasons" requirement and its policy-statement requirement, neither of which factored into the Court's denial of Mr. Ozsusamlar's motion. *See* Dkt. 148 at 4 (resting denial

---

[3] Indeed, it appears Mr. Ozsusamlar has unsuccessfully raised similar arguments through those procedural avenues multiple times. *See* Dkts. 86, 139.

solely on § 3553(a) factors). Consistent with Second Circuit guidance on the scope of review on reconsideration, the Court will consider only Mr. Ozsusamlar's arguments that address matters that the Court may have previously overlooked.

Mr. Ozsusamlar's threshold contention—extrapolating from his passing citation to *United States v. Cook*, 998 F.3d 1180 (11th Cir. 2021)—appears to be that the Court "failed to demonstrate it considered the requisite factors" of § 3582(c)(1)(A) when denying his initial motion. *Id.* at 1182 (holding that such a failure constitutes an abuse of discretion). The Court disagrees. In its prior decision, it explained that its denial of Mr. Ozsusamlar's motion for sentence reduction rested on its conclusion that the § 3553(a) sentencing factors outweighed any extraordinary and compelling reasons that might warrant such a reduction. Dkt. 148 at 4-5. Namely, it determined that the nature of the convictions for which Mr. Ozsusamlar is serving his current sentence—murder-for-hire, conspiracy to commit the same, and conspiracy to commit extortion, Dkt. 91—mandated a sentence that would reflect the seriousness of that offense and provide just punishment. The Court further concluded that Mr. Ozsusamlar's lengthy and serious criminal history and his perpetration of two assaults while incarcerated (including one with a dangerous weapon) demonstrated a continued risk of recidivism and threat to the public, notwithstanding his advanced age. This reasoning is adequate to allow a reviewing court to assess the Court's balancing of the § 3582(c)(1)(A) factors.

Mr. Ozsusamlar next asserts that four of the factual statements in the Court's prior ruling, all of which supported its overall assessment of the § 3553(a) factors, are false. The challenged statements are: (1) that murder-for-hire is "a serious crime of violence"; (2) that Mr. Ozsusamlar had previously been convicted for bribing a public official; (3) that Mr. Ozsusamlar had previously "tak[en] a woman hostage" as part of a past smuggling operation; and (4) that Mr. Ozsusamlar had

possessed a dangerous weapon in prison in connection with an assault. Dkt. 155 at 11-14.[4]  The Court is not persuaded that it overlooked facts or law that might have changed any of these findings.

First, Mr. Ozsusamlar cites an out-of-circuit case holding that under the categorical approach, conspiracy to commit murder for racketeering purposes is not a crime of violence under the Sentencing Guidelines.  Dkt. 155 at 11; *see United States v. McCollum*, 885 F.3d 300, 307 (4th Cir. 2018).  Even accepting the analogy to a different offense, the Court did not conduct a categorical approach analysis when analyzing Mr. Ozsusamlar's murder-for-hire convictions.  Rather, the Court decided that the seriousness of Mr. Ozsusamlar's individual conduct weighed against release—as district courts in this circuit have repeatedly concluded when faced with murder-for-hire crimes.  *See, e.g.*, *United States v. Marmolejos*, No. 99-CR-1048-3 (DC), 2021 WL 3862851, at *5 (S.D.N.Y. Aug. 30, 2021) (emphasizing that murder-for-hire offenses are more serious than crimes of passion); *United States v. Moreno*, No. 03-CR-724 (LAP), 2021 WL 707005, at *2 (S.D.N.Y. Feb. 23, 2021); *United States v. Suero*, No. 11-CR-84 (PAE), 2020 WL 4548043, at *4 (S.D.N.Y. Aug. 6, 2020); *United States v. Davis*, No. 14-CR-00296-PAC-1, 2020 WL 5628041, at *1, *4 (S.D.N.Y. Sept. 21, 2020), *reconsideration denied*, No. 14-CR-296 (PAC), 2020 WL 5912811 (S.D.N.Y. Oct. 6, 2020); *United States v. Martinez*, No. 19-CR-1048-4 (DC), 2021 WL 1143744, at *3 (S.D.N.Y. Mar. 24, 2021); *United States v. Darge*, No. 10-CR-863 (AKH), 2020 WL 3578149, at *2 (S.D.N.Y. July 1, 2020).  To be sure, "the gravity of [this] offense does not categorically preclude the Court from reducing [Mr. Ozsusamlar's] sentence."  *United States v. Perez*, No. 02-CR-7 (JBA), 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021).  But when considered along with his serious criminal history and his more recent disciplinary record while incarcerated, the nature of his crimes still counsels against that outcome.

---

[4] Mr. Ozsusamlar further challenges the "Court['s] allegation that . . . Ozsusamlar smuggled illegal alien[s] out of [the] co[u]ntry 'multiple time[s],'" but this language does not appear in the Court's prior ruling.

Turning to that criminal history, Mr. Ozsusamlar next challenges the Court's statements, drawn from the 2007 presentence investigation report described in the Government's opposition letter, that he had previously held a woman hostage during a smuggling operation and had previously bribed a public official during a fraud scheme. To the extent that Mr. Ozsusamlar's arguments attack the veracity of the presentence report's statements, the time to object to that report was at sentencing, or perhaps in a collateral attack alleging ineffective assistance of counsel with respect to the report. But at this stage, Mr. Ozsusamlar has offered no plausible reason for the Court to doubt the truth of the presentence report, and the Court may properly consider it. *See, e.g.*, *Marmolejos*, 2021 WL 3862851, at *1 (relying on presentence report in considering compassionate release motion).

Mr. Ozsusamlar's final challenge to the Court's § 3553(a) assessment disputes the conclusion that he possessed a dangerous weapon in prison in connection with an assault; he asserts the weapon in question was merely a rock and that no one was seriously injured during that incident or during the other assault incident on his record. Even if this point had been raised earlier, it would not have altered the Court's conclusions regarding the negative impact of Mr. Ozsusamlar's recent disciplinary record on the § 3553(a) analysis—specifically, the conclusion that he has not been deterred despite his lengthy sentence and poses a continued risk of recidivism. *See, e.g.*, *United States v. Peralta*, No. 19-CR-135 (VEC), 2020 WL 6683095, at *2 (S.D.N.Y. Nov. 12, 2020) (concluding that two recent acts of assault in prison were relevant § 3553(a) factors and weighed against release).[5]

In short, Mr. Ozsusamlar has not persuaded the Court that it overlooked or misapprehended any matters that might have altered its earlier decision.

---

[5] Mr. Ozsusamlar also argues that the § 3553(a) analysis is distinct from the analysis under 18 U.S.C. § 3142, the latter of which identifies the factors governing pretrial detention decisions, including "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The Court presumes this argument intends to cast doubt on the applicability of the Court's determination that Mr. Ozsusamlar would "pose a danger to the safety of the community upon his release." Dkt. 148 at 4. But protection of the public is also a § 3553(a) factor.

## CONCLUSION

For the foregoing reasons, Mr. Ozsusamlar's motion for reconsideration is denied. The Clerk of Court is respectfully directed to terminate the motion at docket number 155 and to mail a copy of this Order to Mr. Ozsusamlar.

SO ORDERED.

Dated:   October 20, 2021
         New York, New York

Ronnie Abrams
United States District Judge